# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **18-MJ-00071** |
| | : | |
| **v.** | : | |
| | : | |
| **DIRK ESTES** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF
## PRETRIAL DETENTION AND FOR EXCLUSION OF TIME

The United States respectfully submits this Memorandum in support of its motion for pretrial detention pursuant to 18 U.S. C. § 3142(f)(2)(A); (d)(1)(A)(i) and § 4241(a-b) and for exclusion of time pursuant to 18 U.S. C. § 3161(h)(1)(A).

## FACTUAL BACKGROUND

The defendant was arrested on July 10, 2018, at approximately 03:52 a.m., when he entered without authorization a restricted area inside the White House complex, in the 1600 block of Pennsylvania Avenue, N.W., Washington, DC.  Specifically, the defendant, Dirk Estes was observed with a dog approaching the security fencing on Pennsylvania Avenue and East Executive Avenue, NW.  ESTES picked up the dog from the ground and walked southbound in the pass holder/workers entrance toward the entry gate for the east wing of the White House. A USSS officer verbally instructed ESTES to Get Back, at least three times and ESTES replied "What's your badge number, I can be here."  The officer informed the defendant that he was not authorized to be in the area and needed to leave. The defendant then proceeded to move a piece of the security fencing to create a gap large enough to walk through. The security fencing sign indicated RESTRICTED AREA DO NOT ENTER.  The defendant stepped through the gap.

USSS assisting officers, arrived via official trek bicycle and marked patrol vehicle and re-voiced for the defendant to come back to the sidewalk. The defendant walked out of secure area towards the officers and at that time was taken into custody.

A search of the defendant's person resulted in the discovery of two book bags containing cloths and personal items, a wallet containing his identification, as well as DC Correction ID bracelet dated June 28th, 2018. USSS Special Agents responded to interview the defendant. Following Miranda, the defendant agreed to answer questions.  The defendant conveyed to USSS agents, his admiration for President Trump and expressed his adamant desire to meet with the POTUS.  Furthermore, the defendant consistently mentioned finding the "front door of the White House" and was adamant that the entrance that he had breached was in fact the front door.  The agent queried the defendant with why he felt it was feasible to travel to the White House devoid of a proper appointment with POTUS or a member of the administration and actually be able to enter.  The defendant stated that "he wanted to explain to POTUS that God asked him to change the world" and felt that he could travel to the White House and be granted access.  The defendant was queried with respect to means of self-sustenance to which he responded that he works in "admin" for Avanti Real Estate.  However, the defendant did state that he was trying to obtain employment with the Trump Corporation also in the field of "admin."  The defendant was adamant that he did not wish any harm toward POTUS or any other protectee of the USSS.

The defendant is known to the USSS based on his prior contact at the White House Complex and Grounds. A review of the defendant's prior criminal history establishes that he has been arrested several times with a history of Unlawful Entries. On July 9, 2018, the night prior to the instant offense, the defendant arrived at the White House and was spotted at Trump Tower around 1200-1300 and migrated to the White house. The defendant has a fascination with

POTUS and said that he wants to meet him. The defendant did admit that he was there as well.
He explained that he messed up going there in hopes that POTUS would be there. The defendant
claimed to have taken a taxi to get to DC from Maryland. He is "unsure if he will go back to
Maryland tonight" and may stay "out here" (his words). The defendant seemed to be dressed
appropriately for the weather. He wore jeans and a t-shirt that was covered by a Donald Trump
fleece. The defendant carried a backpack and traveled with a small dog (Yorkie).

While conducting the interview, agents found out that the defendant was previously
arrested and has been committed to Comprehensive Psychiatric Emergency Program (CPEP)
previously. The defendant said that he was arrested for clothing returns at a store. While
speaking to ESTES his demeanor seemed to be impaired from some type of drug use/alcohol.
His gaze was fixed and his eyes seemed glazed. However, when agents questioned if he was
under the influence of any drugs or alcohol, the defendant denied. The defendant spoke with a
really light tone and slurred most sentences into one long word. Initially, the defendant said that
he has been living locally. However, later he claimed he has been staying with a friend named
Kelsey in Maryland. The defendant didn't recall her last name or where she lives. When agents
asked for Kelsey's phone number, the defendant said that he didn't know her number.

The defendant wants to meet POTUS just to meet him. He said that he's a major fan of
the president and wants to work on his campaign if possible. The defendant said that if he can't
meet POTUS today that he will continue to try to meet him until he does get the opportunity.
When agents asked the defendant if he was taking any medicine, he replied no. The defendant
said that he does drink wine and smoked marijuana when he was younger. The defendant said
that he came to the White House to spread the good word and he was simply obeying orders

from God. The defendant traveled with a small New Testament Bible that he held in his hand for the entirety of the interview.

The defendant said that he does not wish to pose harm to any USSS protectees. He stated that he had no military experience either.  The defendant told agents that he does have family on the north side of DC, but didn't recall any of their names or numbers. The defendant said that he does not own any weapons. He denied being in any hospitals previously for mental evaluation. The defendant plans to continue to come to the White House to speak to POTUS. He does not have any intention of quitting his venture to meet the President. Agents told him that meeting POTUS wouldn't be possible. He smiled and said "I'll just keep trying."

On July 10, 2018, the defendant made his initial appearance before the Honorable Deborah A. Robinson, charged by criminal complaint with violation of 18 U.S.C. § 1752(a)(1) Entering or Remaining in Restricted Building or Grounds.  The government orally moved for a 24-hour competency screening examination pursuant to 18 U.S. C. § 4241 and that the defendant be held as a risk of flight pursuant to 18 U.S. C. § 3142(f)(2) (A) and that the defendant has a pending felony case in Maryland and should be held pursuant to 18 U.S. C. § 3142(d)(1)(A)(i).  Pretrial services reported that the defendant tested positive for PCP and had a history of two failures to appear.  Counsel for the defendant objected to the competency screening.  The Court ordered a twenty-four hour competency screening and scheduled a hearing on July 12, 2018, before the Honorable G. Michael Harvey.  The competency examination has not been completed and on information and belief will not occur until sometime next week.

On July 11, 2018, the government filed an Information charging the defendant with one count of 18 U.S.C. § 1752(a)(1) Entering or Remaining in Restricted Building or Grounds.

**ARGUMENT**

The Court should defer ruling on the government's request for detention until after a competency evaluation, a competency hearing, and any necessary period of competency treatment. "[I]f there is reasonable cause to believe that a defendant has a mental disease rendering him unable to understand the nature and consequences of the proceedings and against him and/or to assist in his defense, it makes sense that the preliminary hearing and detention hearing be deferred until such time as the defendant has been determined to be mentally competent." *United States v. Moser*, 541 F. Supp. 2d 1235, 1237 (W.D. Okla. 2008). But see, "[T]he need for scrutinizing a defendant's understanding of the proceedings at initial phases appears to be somewhat lesser than during trial." *United States v. Crawford*, 738 F.Supp. 564, 565 (D.D.C. 1990). Where there are concerns about a defendant's competency to understand the proceedings, it is also difficult to assess in any meaningful way the defendant's risk of flight.

If the Court is inclined to rule on detention at the hearing on July 12, however, the Court should find that no condition or combination of conditions would reasonably assure the defendant's appearance. The defendant has failed to appear in court in the past and tested positive for PCP, which indicates unreliability. The instant offense was committed while the defendant was on release for a matter in Maryland and presumably under court supervision. The Court cannot trust that he will comply with release conditions and return to Court for future hearings.

The government further requests that the Court make Speedy Trial Act findings with respect to this case. The 70-day clock began to run on July 11, 2018, with the filing of the Information. 18 U.S.C. § 3161(c)(1). Time should be excluded from July 11, 2018, through the

conclusion of any proceedings to determine the defendant's mental competency.  18 U.S.C. § 3161

(h)(1)(A).[1]


**CONCLUSION**

For the foregoing reasons, the government requests that the Court stay consideration of the

government's request for detention pending the results of the forensic examination.

Respectfully submitted,


JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By:  _____/s/_____
BRENDA J. JOHNSON
Assistant United States Attorney
D.C. Bar No. 370737
555 4th St., N.W.
Washington DC 20530
(292) 252-7801
Brenda.Johnson@usdoj.gov

---

[1] The pendency of the government's motion for detention provides an alternative basis for excluding time.  18 U.S.C.§ 3161(h)(1)(D).